IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN McCORMICK, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CHICAGO TRANSIT AUTHORITY, )<br>)<br>Defendant. ) | Case No. 23 C 1998 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Kevin McCormick has sued his former employer, the Chicago Transit Authority (CTA), for terminating him after he declined to comply with CTA's COVID-19 vaccination policy. McCormick alleges that CTA discriminated against him by denying his application for a religious exemption from the vaccine mandate despite approving other employees' religious exemption applications. McCormick has asserted three claims. In Count 1 of his complaint, McCormick claims that CTA failed to reasonably accommodate his religious beliefs in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a). In Count 2, asserted under 42 U.S.C. § 1983, he claims that CTA discriminated against him in violation of the Equal Protection Clause of the Fourteenth Amendment. In Count 3, McCormick claims that CTA substantially burdened his religious exercise in violation of the Illinois Religious Freedom Restoration Act (IRFRA), 775 ILCS 35/15. CTA has moved to dismiss Count 2 and Count 3 of McCormick's complaint. For the reasons below, the Court grants CTA's motion to dismiss Count 2, but denies CTA's motion to dismiss Count 3.

## Background

The following facts are taken from McCormick's complaint. McCormick was employed by CTA as an electrician from January 2019 until his termination on an unspecified date between September 2021 and March 2023. He is a practicing Catholic and holds a sincere religious belief "that abortion is a grave sin against God." Compl. ¶ 16. He believes that he must refuse vaccination "because of the connection between all three COVID-19 vaccines (in their origination, production, development, or testing), and the cell lines of aborted fetuses." *Id.* ¶ 15. McCormick further believes that "his body is the temple of the Holy Spirit, and to inject medical products that have any connection whatsoever to aborted fetal cell lines would be defiling the Temple of the Holy Spirit." *Id.* ¶ 18.

In September 2021, CTA announced that all employees must be fully vaccinated against COVID-19 unless they apply for and receive an exemption based on a sincerely held religious belief or moral conviction. On September 29, 2021, McCormick followed CTA procedures for requesting a religious exemption by completing and submitting two CTA forms: (1) "Request For Religious Accommodation or Moral Conviction Exemption," and (2) "Request For Religious Exemption/Accommodation Related to COVID-19 Vaccine." Compl., Ex. B at 1, 3. On the forms, McCormick stated that "[a]s a practicing Catholic, I can not in good conscience accept an experimental mRNA gene therapy drug that includes the use of aborted fetal cell lines. These heinous acts contradict my religious beliefs. I also believe my body was created in the image of Christ and to alter it in such ways would be to reject the Lord, Jesus Christ." *Id.* at 1. McCormick identified the basis for his religious belief as "[r]eceiving sacraments of the

Catholic Church, fourteen years of Catholic schooling, the Bible, several religious doctrines, and practicing faith." *Id.* He also "attached several documents to support [his] sincerely held religious beliefs, practices, morals, and individual conscience." *Id.* This supporting documentation included a three-page notarized affidavit asserting that certain Catholic doctrines compelled his opposition to the COVID-19 vaccines, *id.* at 6–8; a two-page letter explaining "how the Catholic Church's teaching may lead Catholics . . . to decline certain vaccines," *id.* at 9–10; and two pages of Bible verses, *id.* at 11–12.

CTA denied McCormick's exemption application. McCormick's complaint does not include the CTA's stated reason for the denial. CTA later discharged McCormick and replaced him with a "non-Catholic Practicing individual who received the vaccination." Compl. ¶ 22.

In March 2023, McCormick filed suit against CTA, alleging that the agency's actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) (Count 1), the Equal Protection Clause of the Fourteenth Amendment (Count 2), and the Illinois Religious Freedom Restoration Act (IRFRA), 775 ILCS 35/15 (Count 3). CTA has moved to dismiss Count 2 and Count 3 for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## Discussion

To survive a motion to dismiss for failure to state a claim, "the plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the pleading stage, the Court must "accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in the

3

plaintiff's favor." *Id.*

A. **Fourteenth Amendment claim**

CTA first argues that McCormick fails to state an equal protection claim because he alleges only that CTA arbitrarily singled out and denied his religious exemption application (a "class of one" theory), not that CTA intentionally denied his application because he was Catholic (a "class membership" theory). CTA contends that "the Equal Protection Clause of the Constitution does not protect public employees who make such class-of-one claims." Def.'s Reply at 3.

Although "[t]he typical equal protection case involves discrimination by race, national origin or sex," the Equal Protection Clause "also prohibits the singling out of a person for different treatment for no rational reason." *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013). The Supreme Court has held, however, that "the class-of-one theory of equal protection does not apply in the public employment context." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601–02 (2008). Allegations that "government employers . . . have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner" are insufficient to state a claim for an equal protection violation. *Id.* at 605. Rather, "the Equal Protection Clause is implicated when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically differently." *Id.* at 605. This type of equal protection claim requires a plaintiff to show that "defendants acted with a nefarious discriminatory purpose and discriminated against him based on his membership in a definable class." *Word v. City of Chicago*, 946 F.3d 391, 396 (7th Cir. 2020).

In his complaint, McCormick alleges only that "[t]he Equal Protection

4

Clause . . . requires that the government treat similarly situated persons alike" and that "CTA has violated [his] right to equal protection by granting religious exemption requests to some similarly situated employees but denying the same to him."  Compl. ¶ 37.  *Engquist* squarely bars a claim on that basis.  *See id.* at 608 (rejecting the argument that a public employee states an equal protection claim by alleging "that the government's differential treatment was intentional, that the plaintiff was treated differently from other similarly situated persons, and that the unequal treatment was not rationally related to a legitimate government purpose").  To be sure, McCormick alleges that he is a "practicing member of the Catholic faith" and that he "shared these religious beliefs . . . with the CTA" in his exemption application.  Compl. ¶¶ 7, 19.  But he makes no specific allegations that CTA made a "class-based decision" against him because of his status as a Catholic or as a member of any other definable group.  *Engquist*, 553 U.S. at 605.  McCormick therefore has failed to state an equal protection claim.

**B.     IRFRA claim**

CTA next argues that McCormick fails to state a claim under IRFRA because its mandatory vaccination policy promotes the "compelling governmental interest" of controlling the spread of COVID-19 and McCormick has failed to allege "any less restrictive policy that would achieve the same result."  Def.'s Mem. in Supp. of Mot. to Dismiss at 6, 8.

IRFRA mandates that the government "may not substantially burden a person's exercise of religion" unless it demonstrates that the challenged action "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest."  775 ILCS 35/15.  In response, McCormick

5

concedes that "efforts to contain the spread of a deadly disease are 'compelling interests of the highest order.'" Pl.'s Resp. at 7 (quoting *On Fire Christian Ctr., Inc. v. Fischer*, 453 F. Supp. 3d 901, 910 (W.D. Ky. 2020)). The only remaining question is whether McCormick has adequately alleged that CTA used the "least restrictive means" of furthering this interest.

The Court does not decide this question in a vacuum. McCormick alleges (and CTA does not dispute) that CTA's vaccination policy provides for religious exemptions. Therefore, this is *not* a case in which the agency maintains that a no-exceptions vaccination policy is the least restrictive means to achieving its stated interest. To the contrary, CTA is already employing a less restrictive alternative by permitting at least some religious exemptions. The fact-specific circumstances of this case thus require CTA to establish that its denial of McCormick's exemption was part and parcel of the "least restrictive" policy that CTA chose to achieve its asserted interest. McCormick alleges in his complaint, however, that CTA denied his exemption application for no rational reason whatsoever. At this stage, the Court must credit that allegation. The Court may reasonably infer that a policy that purports to permit religious exemptions but then irrationally denies those exemptions to some small number of employees is not the "least restrictive means" of curtailing the spread of COVID-19. At a later point in this litigation, CTA may be able to offer evidence that it had a specific reason for denying McCormick's exemption application, and that this reason was an essential part of a policy that was, on the whole, the least restrictive means to effectively achieving the government's goal of COVID-19 containment. For now, however, the Court concludes that McCormick has stated a claim for relief under IRFRA.

6

**Conclusion**

For the foregoing reasons, the Court grants CTA's motion to dismiss McCormick's equal protection claim (Count 2) but denies CTA's motion to dismiss McCormick's IRFRA claim (Count 3) [dkt. no. 12]. The telephonic status hearing set for 8:55 a.m. on September 15, 2023, will proceed as scheduled.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 30, 2023