IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN McCORMICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 23 C 1998 |
| ) | |
| CHICAGO TRANSIT AUTHORITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Kevin McCormick has sued his former employer, the Chicago Transit Authority, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1). During the COVID-19 pandemic, the CTA established a policy requiring its employees to be vaccinated against the virus. McCormick sought a religious-based exemption from the requirement. The CTA concluded that McCormick had not shown that his request for an exemption was actually religion-based and denied his request. When McCormick still declined to be vaccinated, the CTA terminated his employment. This lawsuit followed.

The case is set for trial in late August. Each side has disclosed a witness to render opinion testimony at trial, and each side has moved to exclude the other side's expert witness. The Court has considered the parties' written submissions and their oral arguments presented on July 3, 2025.

**1.    Plaintiff's witness Pamela Acker**

Based on the Rule 26(a)(2) disclosure regarding McCormick's witness Pamela

Acker, she intends to render opinions that: (1) aborted fetal cell lines were used in the development of the COVID-19 vaccine, as well as a detailed description of how they were purportedly used; (2) McCormick, as a practicing Roman Catholic, had a legitimate religious-based objection to the vaccine due to the use of aborted fetal cell lines (along with a detailed description of why this is so); (3) contentions that other medications that McCormick uses or has used similarly involved use of aborted fetal cell lines are inaccurate, along with an explanation of why; (4) the COVID-19 vaccine causes physical harm to vaccinees, and the vaccine does not prevent infection; and (5) McCormick's proposed alternative to vaccination—wearing a facemask and keeping a distance from others—was an adequate alternative.

The CTA contends that Acker's opinions should be barred because she is not sufficiently qualified by education, training, or experience to give expert testimony on any of the points in question, and because her opinions regarding the religious legitimacy of McCormick's beliefs will not assist the jury in determining any fact in issue.

Under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993), and its progeny,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"Whether a witness is qualified as an expert can only be determined by comparing the area[s] in which the witness has superior knowledge, skill, experience, or education with the subject matter of his testimony." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) (citation omitted). The question is not whether the witness is qualified in general, "but rather whether [her] qualifications provide a foundation for [her] to answer a specific question." *Id.* at 617 (internal quotation marks omitted).

Acker's relevant background is as follows. She has an undergraduate degree in biology, earned in 2004, and while an undergraduate she was involved in genomics research on a particular topic for a year. Acker worked as a summer intern for a pharmaceutical company just after college in 2004 and worked for an unspecified period in 2005 for a university as a senior research technician in its "whole genome sequencing center." Her curriculum vitae does not disclose any work or further education in the field from 2005 until 2010. She pursued a master's degree in biology at The Catholic University of America from 2010 through 2012 and was awarded that degree in 2012. During various periods while at Catholic University, Acker worked as a research assistant, a teaching assistant, and an adjunct instructor. Evidently Acker left her work at one lab at Catholic University in 2011 because she had a "principled objection to working with aborted fetal cell lines," Pl.'s Resp. to Def.'s Mot. to Bar at 1, which she evidently says was occurring in the lab where she was working. She worked in a different lab during 2012 before earning her degree. After this, Acker taught high school biology for about six years and developed curricula for a homeschool co-op and for a Catholic homeschool organization for about three years. For the last six years,

since 2019, Acker has done the following, as she describes it in her CV:

> Consultant, Presenter, and Author (2019-present)
>
> > Study a variety of topics in the peer-reviewed literature in the subjects of biology and immunology in order to present information to the public in written or audio/visual formats.
> >
> > Prepare and present material on immunology, vaccination, evolution, genetics, and other topics.
> >
> > Travel throughout the country to bring presentations to local populations who request them, as well as using online platforms to disseminate scientific information.
> >
> > Developed science curriculum guideline documents designed for homeschooling parents.
> >
> > Authored multiple books, one of which has been translated into multiple languages.

Mem. in Support of Def.'s Mot. to Bar, Ex. B (dkt. no. 149-2), ECF p. 29 of 31.

Acker is not qualified to render opinion testimony at a trial regarding the basis or legitimacy of McCormick's claimed religious beliefs regarding the COVID-19 vaccine or vaccines generally. She does not identify any more training or expertise in the field of Catholic doctrine or theology than the average Catholic generally, or at least no more than the average person who attended a Catholic university and, perhaps, took the undergraduate theology courses typically required at such universities for persons not majoring in theology. The Court has no doubt that Acker has read a lot about Catholic teaching, including as it applies to vaccines, but that—even together with the rest of her background—does not give her any *specialized* knowledge within the meaning of Rule 702 that qualifies her to render opinions on these topics. The fact that she has written, essentially based on self-study, a book on the topic of "Vaccination: A Catholic Perspective" does not alter this conclusion.

4

Qualifications aside, any opinion by Acker on the sincerity of McCormick's religious beliefs or whether those beliefs actually motivated his objection to getting vaccinated would amount to an opinion regarding his state of mind, which is generally an inappropriate topic for "expert" or other opinion testimony. *See, e.g., Hershey v. Pacific Inv. Mgmt. Co.*, 697 F. Supp. 2d 945, 949-50 (N.D. Ill. 2010); *Wells v. City of Chicago*, No. 09 C 1198, 2012 WL 116040, *11-12 (N.D. Ill. Jan. 16, 2012) (Kennelly, J.).

The basis for Acker to testify on the remaining topics in her report, though arguably at a bit higher level than her background on the religious-beliefs issues, is similarly infirm as a foundation for rendering expert opinion testimony at a trial. On the particular topics regarding which she proposes to opine—how the COVID-19 vaccine is made; how other vaccines are made; the effectiveness and effect of the vaccine; and the adequacy of McCormick's proposed alternative to vaccination—the record is sufficiently clear that Acker derives her claimed expertise (and, it appears, her opinions) simply from compiling and reading material produced by others. Given her biology background, Acker no doubt has a greater degree of understanding of these materials than the average person. But simply compiling, reading, and rendering opinions and conclusion reached by others who themselves may have the required specialized training or experience—which is all that Acker's expert disclosure reflects she has done—does not qualify one to testify as an expert under Rule 702.

McCormick, as the proponent of Acker's testimony, bears the burden of establishing its admissibility. *See, e.g., Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). He has failed to carry that burden. The Court grants the CTA's motion to preclude Acker's testimony in its entirety.

**2.      Defendant's witness Mark Roberts**

The CTA has disclosed as an expert witness Dr. Mark Roberts, an epidemiologist who has worked for a little over fifty years in public health, occupational medicine, and academia. He has a master's degree in education; a master's of public health in epidemiology and biostatistics; a doctorate in epidemiology and biostatics; and he is a medical doctor. He served as the State Epidemiologist for the State of Oklahoma. He has published numerous articles, books, and other materials in the field of epidemiology, he has taught graduate-level courses; and has been qualified to render expert testimony in a number of court cases. In addition, since the outset of the COVID-19 pandemic, Dr. Roberts has consulted with about two dozen companies, organizations, agencies, law firms, and others regarding responses to issues related to COVID-19.

Dr. Roberts's report states that he has "reached the overarching opinion that there is no objective, scientific evidence supporting Mr. McCormick's claim of a religious exemption from the [CTA's] COVID-19 vaccination requirements for its employees." *See* Def.'s Opp. to Pl.'s Mot. to Bar, Ex. A at 1. His more detailed opinions are as follows:

- Community spread of COVID-19 in Cook County and surrounding counties was documented in 2020-21, the relevant period.

- The CTA's COVID-19 vaccination policy was consistent with CDC and OSHA recommendations for preventing virus spread in the workplace.

- McCormick's refusal to be vaccinated and his refusal to participate in nasal swab tests as an alternative thwarted the implementation of the CTA's

6

policy to reduce the spread of COVID-19 in the workplace. Allowing him to stay at work would have adversely affected the CTA's ability to provide its workers a safe environment and would have increased risks to their health.

- "Mr. McCormick's objection to the use of embryonic cells severely hampers his options for treatment of common illnesses like colds, influenza and COVID-19, when one considers the number of over-the-counter and prescribed medications in popular use that have been tested using human embryonic cells. More specifically, Mr. McCornick's refusal to get a vaccine due to concerns about human embryonic cells is inconsistent, as he indicated he would rely on Ivermectin for preventing COVID-19 infection. Ivermectin's toxicity was evaluated using human embryonic cells. In addition, Mr. McCormick's claim that human embryonic cells were used in the manufacturing process is inaccurate."

*See* Def.'s Opp. to Pl.'s Mot. to Bar, Ex. A (Roberts report) at 14-15.

McCormick does not challenge Dr. Roberts's scientific or medical qualifications or expertise. The Court concludes that he is qualified to render opinion testimony in the fields in which he has worked and taught.[1] Rather, McCormick challenges the admissibility of Dr. Roberts's testimony on the following points, arguing that they are not relevant and/or that the testimony would not be helpful to the jury:

- He challenges Dr. Roberts's opinion that there is "no objective scientific

---

[1] McCormick does make a three-sentence challenge to the claimed absence of a "disclosed, reliable methodology," *see* Pl.'s Mot. to Bar Dr. Robert's [sic] Testimony at 10, but he has not developed the point and has therefore forfeited or waived it. *See, e.g., Sullers v. Int'l Union Elevator Constructors, Local 2*, 141 F.4th 890, 896 n.14 (7th Cir. 2025). That aside, Dr. Roberts's methodology for how he reached his conclusions is adequately explained and sufficiently reliable.

evidence" supporting McCormick's request for a religious exemption from the CTA's vaccination requirement. McCormick argues that this is irrelevant, as religious objections are not evaluated based on their scientific support.

- McCormick contends that Dr. Roberts's opinion that the CTA's policy was consistent with CDC and OSHA guidance is not relevant and that instead what is relevant in this case is whether the policy was applied in a discriminatory manner.

- McCormick challenges Dr. Roberts's anticipated testimony regarding the community spread of COVID-19 in 2020-21, when the CTA's policy was established and implemented. This information is not relevant, McCormick argues, because it was not cited at the time as a reason for denying his exemption request.

- McCormick challenges Dr. Roberts's anticipated testimony that McCormick's refusal to comply with the vaccination requirement posed a safety risk. He contends that this was not part of the CTA's stated reasons at the time and thus is not evidence of its motives or reasons for acting.

- Finally, McCormick challenges Dr. Roberts's anticipated testimony that McCormick's refusal to take the COVID-19 vaccine based on concerns about fetal cells is inconsistent with his willingness to use Ivermectin. McCormick argues that this does not account for religious teaching on the relevant points and that Dr. Roberts does not support his opinion with religious doctrine.

- More generally, McCormick argues that he is not challenging the CTA's vaccination policy as such, but only how it was applied to him. Dr. Roberts's opinions aren't relevant to *that*, McCormick contends.

McCormick asserts a claim under Title VII for failure to accommodate his religious beliefs. To prevail, he must establish that: (1) he had a belief or practice that was religious in nature and conflicted with an employment requirement; (2) he called this belief or practice to the CTA's attention; and (3) his religious belief or practice was the basis for his discharge. *See Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013). If McCormick establishes these elements, then the burden shifts to the CTA to show that it could not accommodate McCormick's religious belief or practice without undue hardship. *Id.*

The CTA argues that Dr. Roberts's testimony is relevant and admissible regarding the first and third elements of McCormick's claim and on the issue of undue hardship. This is not so for Dr. Roberts's "overarching opinion that there is no objective, scientific evidence supporting Mr. McCormick's claim of a religious exemption" to the vaccination requirement. As McCormick argues, a religious belief of practices does not require scientific or "objective" support. Dr. Roberts may not render this opinion at trial.

That said, the remainder of Dr. Roberts's opinions that are challenged by McCormick are admissible at trial, with some limits. First, his testimony about the prevalence and community spread of COVID-19 during the relevant time period and the consistency of the CTA's vaccination mandate with CDC and OSHA guidance is relevant and admissible on the question of undue hardship. Second, the same is true regarding the safety risk posed by McCormick's noncompliance with the vaccination mandate. McCormick contends that this testimony is irrelevant because it was not cited by the CTA at the time. But he offers no authority for the proposition that this makes the evidence inadmissible on the undue hardship question. More generally, the CTA is

9

entitled to explain (within the limits regarding cumulativeness, etc. posed by Federal Rule of Evidence 403) its basis for establishing and following the policy that was applied to McCormick and that led to his termination. This is so even if, as McCormick contends, he is not challenging the policy generally, but only its application.

The Court also declines to exclude Dr. Roberts's testimony regarding how and to what extent fetal cell lines were used in the development and testing of the vaccine. The CTA is entitled to challenge McCormick's contention that his opposition to getting vaccinated was not actually religious-based. This is not a baseless challenge. McCormick's submission to the CTA and statements he made at the relevant time are consistent with a contention that his objections were based on concerns about the efficacy and potential side-effects of the vaccine, and/or policy or political beliefs. Evidence tending to show that McCormick did not consistently follow his claimed desire to avoid medications that used fetal cell lines would tend to make it more likely that his opposition to the vaccine was not religious-based or was not sincere.

But Dr. Roberts may not render opinions or conclusions regarding the "consistency" or inconsistency of McCormick's views or practices. On that point, which essentially amounts to an inference or conclusion to be drawn from other evidence (including testimony that Dr. Roberts will render), Dr. Roberts has no specialized expertise that exceeds that of a jury. The jury is fully capable of assessing the evidence and making a determination of whether McCormick's objection to the COVID-19 vaccine was actually based on religion and whether that objection, if religion-based, was sincere. The Court therefore excludes this particular testimony by Dr. Roberts.

**Conclusion**

For the reasons described in this memorandum opinion and order, the Court grants defendant's motion to bar plaintiff's witness Pamela Acker [dkt. 148] and partially grants but largely denies plaintiff's motion to bar defendant's Dr. Roberts's [dkt. 153].

Date: August 4, 2025

_____
MATTHEW F. KENNELLY
United States District Judge